UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LM INSURANCE CORPORATION,

                Plaintiff,

– against –

JAMES RIVER INSURANCE COMPANY *and* ARCH SPECIALTY INSURANCE COMPANY,

                Defendants.

**OPINION & ORDER**

22-cv-7472 (ER)

RAMOS, D.J.:

    LM Insurance Company ("LMIC") brought claims against James River Insurance Company ("James River") and Arch Specialty Insurance Company ("Arch") for a determination of its rights and duties with respect to costs from an underlying personal injury suit. Before the Court is Arch's motion to dismiss. Doc. 17. For the reasons set forth below, the motion to dismiss is DENIED.

## I. BACKGROUND

### A. The Construction Project and Relevant Insurance Policies

    In 2017, a construction project was ongoing at 48 Wall Street, New York, New York ("the Project"). *See* Doc. 1 ¶ 10. 48 Wall, LLC ("48 Wall") was the Project owner, and InsideSquad, Inc. ("InsideSquad") was the general contractor. *Id.* ¶ 15. Pursuant to its contract with 48 Wall ("the Contract"), InsideSquad agreed to indemnify and defend 48 Wall with respect to all liabilities "directly or indirectly arising out of . . . the work performed hereunder, or any part thereof . . . or [] any act or omission of [InsideSquad], any subcontractor (of any tier), anyone directly or indirectly employed by them, or anyone that they control or exercise control over." *Id.* ¶¶ 15–16. The Contract also required InsideSquad to obtain commercial general liability insurance, including for bodily injury, with $1,000,000 single limit coverage and $2,000,000 general aggregate insurance, and to add 48 Wall as additional insured on that policy. *Id.* ¶¶ 16–18.

LMIC issued a commercial general liability policy to 48 Wall, No. TB2-Z11-261409, with a policy period from September 27, 2016 to September 27, 2017 ("the LMIC Policy").  *Id.* ¶ 24.  The LMIC Policy contained an excess insurance clause that provided that the LMIC insurance was "excess over . . . [a]ny other primary insurance available to [48 Wall] covering liability damages arising out of the premises or operations, or the products and completed operations for which [48 Wall] ha[d] been added as an additional insured."  *Id.* ¶ 25.

James River issued a commercial general liability policy to InsideSquad, No. 00067687-2, with a policy period from July 15, 2017 to July 15, 2018 ("the James River Policy").  *Id.* ¶ 26.  In accordance with the Contract, the James River Policy had policy limits of $1,000,000 per occurrence and $2,000,000 in general aggregate, and it listed 48 Wall as an additional insured.  *Id.* ¶¶ 27–28.

The Contract also required InsideSquad to ensure that its subcontractors also procured insurance coverage.  *Id.* ¶ 16.  InsideSquad subcontracted with DATO A/C Inc. ("DATO"), which in turn subcontracted with Star Heating and Cooling Corp. ("Star") to perform work at the Project.  *Id.* ¶¶ 12–13.  Arch issued a general liability policy to DATO, No. AGL0011742-03, with a policy period from April 8, 2017 to April 8, 2018 ("the Arch Policy").  *Id.* ¶ 29.  The Arch Policy listed 48 Wall as additional insured with respect to personal and bodily injury "caused, in whole or in part, by:  (1) [DATO's] acts or omissions; or (2) [t]he acts or omissions of those acting on [DATO's] behalf in the performance of [DATO's] ongoing operations for [48 Wall]."  *Id.* ¶¶ 30–32.  The Arch Policy further included an endorsement, which provided that the policy would not apply to any liability for bodily injury to any worker that "in any way, in whole or in part, arises out of, relates to or results from operations or work performed on [DATO's] behalf by a subcontractor," unless the subcontractor:  (1) had a commercial general liability insurance policy listing DATO as additional insured with at least a $1,000,000 each-occurrence policy limit; and (2) agreed in writing to defend, indemnify, and hold harmless DATO for

2

workers' bodily injury suits arising out of the subcontractor's work ("the Endorsement"). Doc. 19-1 at 37 (internal quotation marks omitted).

The complaint makes no mention of whether Star obtained any insurance coverage or indemnified DATO.

### B. The Injury and Underlying Action

On September 17, 2017, one of Star's employees, Marbrouk Sayari, was injured while working on the Project when a portion of the ceiling fell and struck him while he was standing under it. Doc. 1 ¶ 10. On October 11, 2018, Sayari brought negligence and labor law claims against 48 Wall and InsideSquad in New York state court for his injuries ("the Underlying Action"). Id. ¶¶ 9, 11. InsideSquad impleaded DATO on the basis that DATO directed, controlled, and supervised Star's work. Id. ¶ 13.

#### 1. James River Tender

By letter dated November 13, 2018, LMIC tendered to James River the defense and indemnity of 48 Wall for the Underlying Action. Id. ¶ 33. LMIC sent follow-emails to James River claims specialists on December 17, 2018; January 10, 2019; January 31, 2019; March 28, 2019; April 30, 2019; June 26, 2019, July 18, 2019; August 1, 2019; August 14, 2019; October 18, 2019; and September 11, 2020 requesting a response to the tender. Id. ¶¶ 34–46. On February 10, 2021, James River sent LMIC a letter acknowledging receipt of the prior tenders and stating that it was "not in a position to accept or deny [LMIC's] tender at this time" because, while 48 Wall was additional insured, "coverage would be excess and over any other valid and collectible insurance available to 48 Wall, LLC whether primary, excess, contingent or on any other basis." Id. ¶ 47. On March 7, 2022, LMIC's counsel reiterated to James River the tender of the defense and indemnity of 48 Wall and advised James River that its position to provide 48 Wall only excess (rather than primary) coverage as additional insured was contrary to New York law. Id. ¶¶ 50–51.

*2. Arch Tender*

By letter dated June 18, 2020, LMIC tendered to DATO the defense and indemnity of 48 Wall for the Underlying Action, asking it to forward the letter to DATO's general liability carrier. *Id.* ¶ 52. James River also tendered the defense and indemnity of 48 Wall to Arch. *Id.* ¶ 53. More than one year later, on August 16, 2021, Arch acknowledged receipt of the tender seeking additional insured coverage for 48 Wall, and it disclaimed coverage. *Id.* ¶ 54. On July 13, 2022, LMIC's counsel again tendered the defense and indemnity of 48 Wall to Arch, and Arch again disclaimed coverage by letter dated August 9, 2022. *Id.* ¶¶ 55, 57.

### C. Procedural History

On August 31, 2022, LMIC brought suit against James River and Arch for (1) a declaratory judgment that James River and Arch are required to defend and indemnify 48 Wall for the Underlying Action on a primary, not excess, basis; and (2) a money judgment against James River and Arch, jointly and severally, in an amount equal to what LMIC incurred to defend 48 Wall in the Underlying Action. *Id.* ¶¶ 65, 72.

James River answered the complaint and crossclaimed against Arch on October 28, 2022. Doc. 16. On November 8, 2022, Arch moved to dismiss LMIC's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 17. By footnote in its supporting memorandum of law, Arch contended that "the dismissal of this action should also apply to the James River crossclaims." Doc. 18 at 7 n.1.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In considering a Rule 12(b)(6) motion, a district court may consider only the complaint, exhibits thereto, and any document incorporated by reference or integral to it. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). When a party presents extrinsic evidence in response to a 12(b)(6) motion, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citation and internal quotation marks omitted). Conversion to a summary judgment motion is generally not appropriate unless the parties have had "the opportunity to conduct

appropriate discovery and submit additional supporting materials." *See Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11-cv-3327 (ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013).

Courts most commonly recognize documents as incorporated by reference or integral where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, when considering a motion to dismiss breach of contract claims, courts will look "at the contract itself, which by definition is integral to the complaint." *Sobel v. Major Energy Servs., LLC*, No. 19-cv-8290 (GBD), 2020 U.S. Dist. LEXIS 137832, at *13 (S.D.N.Y. July 31, 2020). "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-cv-432 (JSR), 2021 U.S. Dist. LEXIS 121150, at *9 (S.D.N.Y. June 29, 2021) (citations omitted).

### III. DISCUSSION

Arch moves to dismiss on the sole basis that the conditions of the Endorsement—namely, that Star obtain insurance coverage and indemnify DATO—were not met, and the Arch Policy therefore provides no coverage to 48 Wall of the Underlying Action. Doc. 18 at 3–4, 9–12. LMIC opposes on the basis that Arch failed to establish that the Endorsement applies as a matter of law because the complaint references neither the Endorsement nor any allegations regarding Star's coverage or indemnification. Doc. 20 at 12. Accordingly, Arch's arguments concerning the satisfaction of the Endorsement's conditions raise issues of fact inappropriate to adjudicate on a motion to dismiss. *Id.* at 6. Moreover, LMIC argues Arch errs in alleging that the Endorsement applies as against 48 Wall, as additional insured, rather than merely as DATO, as named insured. *Id.* at 14–21.

Here, the Court will consider the Arch Policy—and therefore the Endorsement—as integral to the complaint, but it cannot consider Arch's allegations with respect to Star's coverage or lack thereof.  LMIC's complaint specifically references and quotes from the Arch Policy, alleging that its terms provide coverage to 48 Wall as additional insured for injuries of the sort alleged in the Underlying Action.  *See* Doc. 1 ¶¶ 29–32.  Thus, the Arch Policy is precisely the sort of prototypical document contemplated as integral to a complaint even when not attached thereto.  *See, e.g.*, *Glob. Network Communs*, 458 F.3d at 157; *Sobel*, 2020 U.S. Dist. LEXIS 137832, at *13.  Accordingly, the Court can properly consider the exact terms of the Arch Policy, including the Endorsement.

But it may neither consider nor accept as true Arch's argument that the terms of the Endorsement were not satisfied insofar as such argument relies upon Arch's factual assertions that Star did not obtain the requisite coverage nor indemnify DATO, as those factual assertions are found nowhere in the complaint.  *See Friedl*, 210 F.3d at 83.  Moreover, the Court will not convert the instant motion to dismiss into a motion for summary judgment because the parties have taken no discovery nor submitted any supporting materials to substantiate the allegations as to DATO's noncompliance and Star's coverage, and Arch's unsupported allegations in its brief cannot suffice.[1]  *See Korova Milk Bar of White Plains*, 2013 WL 417406 at *6.  Consequently, the Court cannot find as a matter of law that the Arch Policy provides no coverage to 48 Wall of the Underlying Action, and Arch's motion to dismiss must be denied.

---

[1] Arch and LMIC's arguments concerning whether the Endorsement applies also against 48 Wall as additional insured are also related to whether the conditions of the Endorsement are satisfied; because the Court denies Arch's motion on the basis that it cannot yet determine whether the conditions are satisfied, the Court also finds that the arguments as to the Endorsement's interpretation are premature and declines to reach them.

7

### IV.     CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 17.

The parties are directed to appear for a telephonic conference on September 8, 2023 at 10:30 AM. The parties are directed to call (877) 411-9748 at that time and enter access code 3029857#.

It is SO ORDERED.

Dated:   August 25, 2023
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.