UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LM INSURANCE CORPORATION,<br><br>       Plaintiff,<br><br>     v.<br><br>JAMES RIVER INSURANCE COMPANY and ARCH SPECIALTY INSURANCE COMPANY,<br><br>       Defendants. | 22 Civ. 7472 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  LM Insurance Company ("LMIC") brings claims against James River Insurance Company ("James River") and Arch Specialty Insurance Company ("Arch") for a determination of its rights and duties with respect to insurance coverage in an underlying personal injury suit in New York State Supreme Court, Queens County (the "Underlying Action").[1] ECF No. 1. James River brings cross-claims against Arch. ECF No. 16. Before the Court are the parties' three cross-motions for summary judgment. ECF Nos. 48, 49, 51. For the reasons set forth below, LMIC's and James River's motions for summary judgment are **DENIED IN PART and GRANTED IN PART**, and Arch's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

### A. The Underlying Action

  The principal underlying facts, familiarity with which is assumed, are set forth in Judge Ramos's Opinion & Order in this case dated August 25, 2023 (the "2023 Opinion"). *See* ECF No. 22; *LM Ins. Corp. v. James River Ins. Co.*, No. 22 Civ. 7472, 2023 WL 5509264 (S.D.N.Y. Aug. 25, 2023). In short, the plaintiff in the underlying action, Mabrouk Sayari, was

---

[1] *See Mabrouk Sayari v. 48 Wall, LLC*, Index No. 715546/2018.

injured in a construction accident at 48 Wall Street, New York, New York (the "Premises") on December 17, 2017. Sayari brought suit against the owner of the Premises, 48 Wall, LLC ("48 Wall"), and the general contractor for the project, InsideSquad, Inc. ("InsideSquad"). Plaintiff LMIC was the insurer for 48 Wall, and defendant and cross-claimant James River was the insurer for InsideSquad. The Underlying Action ultimately settled for $2.6 million, with LMIC and James River exhausting their respective policy limits of $1 million on behalf of 48 Wall and InsideSquad, respectively, and 48 Wall's excess carrier contributing the final $600,000. *See* Steck Decl. Ex. F, ECF No. 55-6; Drudi Decl. & Exs. 1 & 2, ECF Nos. 57, 57-1, 57-2.

Sayari was working on the 48 Wall construction project for a subcontractor of a subcontractor. Specifically, InsideSquad had subcontracted with DATO A/C Inc. ("DATO"), which in turn had subcontracted with Sayari's company, Star Heating & Cooling Corp ("Star"), for HVAC work. During the period covering the accident, DATO had a general liability insurance policy with Arch. *See* Mandelbaum Decl. Ex. A ("Arch Policy"), ECF No. 53-1. For ease of reference, the relationships between the insurers and their named insureds are set forth below:

| | | | |
|---|---|---|---|
| LMIC | → | 48 Wall | (owner of Premises) |
| | | ↓ | |
| James River | → | InsideSquad | (general contractor) |
| | | ↓ | |
| Arch | → | DATO | (subcontractor) |
| | | ↓ | |
| | | Star | (subcontractor) |

Investigations later conducted by James River and Arch concluded that DATO did not have a written contract with Star for its work on the 48 Wall project. *See* Mandelbaum Decl. Ex. E, ECF No. 53-5; Hibbard Aff., ECF No. 53-9.

InsideSquad and 48 Wall were granted default judgments in the Underlying Action against DATO and Star. *See* Steck Opp'n Decl. Ex. B, ECF No. 65-2. Based on exclusions in its policy

2

with DATO, Arch refused coverage to DATO and did not contribute to the $2.6 million settlement with Sayari.

      **B.**     **The Arch Policy**

The policy issued by Arch to DATO includes two endorsements relevant here. First, in an "Additional Insured" endorsement, the Arch Policy lists InsideSquad and 48 Wall as additional insureds for the designated location of 48 Wall Street and provides, in relevant part:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Arch Policy at 9.[2] The Policy's preamble explains that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." *Id.* at 47. DATO is the first Named Insured listed on the declarations page, *id.* at 10, and the only Named Insured under the policy, *id.* at 1-8, 12.[3]

The second endorsement relevant here, entitled the "New York Limitation Endorsement" (hereinafter, the "Exclusion Endorsement" or the "Endorsement"), amends the Arch Policy to add the following:

---

[2] Citations to the page numbers of the Arch Policy refer to the ECF pagination at ECF No. 53-1. Otherwise, citations to page numbers refer to the PDF pagination of the respective document.

[3] The Policy provides that "Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization." Arch Policy at 56. There does not appear to have been any such organization here.

    **A. Section IV – Commercial General Liability Conditions** is amended by the addition of the following conditions:

1. You will obtain agreements, in writing, from all "subcontractors" for each and every job that you employ a "subcontractor", pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold you harmless, and any other Named Insured under this policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of the work performed by the "subcontractor".

2. Certificates of Insurance for Commercial General Liability coverage written on standard Insurance Services Office, Inc. (ISO) forms, or their equivalent, with limits equal to or greater than $1,000,000, will be obtained by you from all "subcontractors" prior to commencement of any work performed for any insured.

3. You, and any other Named Insured under this policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(ies). Each Certificate of Insurance referenced in Paragraph 2 above will show this additional insured designation.

**B.** . . . This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", including injury to any "worker", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from operations or work performed on your behalf by a "subcontractor", unless such "subcontractor":

1. Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:

    a. names you and any other Named Insured as an additional insured;

    b. provides an each-occurrence limit of liability equal to or greater than $1,000,000; and

    c. provides coverage for you for such claim, "suit", demand or loss; and

2. Has agreed in writing to defend, indemnify and hold harmless you and any other Named Insured under the policy for any claim or "suit" for "bodily injury" to any "worker" arising out of the work performed by such subcontractor, to the fullest extent allowed by law.

Arch Policy at 37.

    The Arch Policy also contains a "Separation of Insureds" provision, which states:

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

Arch Policy at 58.

### C. Procedural History

On August 31, 2022, LMIC brought suit against James River and Arch for (1) a declaratory judgment that James River and Arch are required to defend and indemnify 48 Wall for the Underlying Action on a primary, not excess, basis; and (2) a money judgment against James River and Arch, jointly and severally, in an amount equal to what LMIC incurred to defend 48 Wall in the Underlying Action. Compl. ¶¶ 65, 72. James River answered the complaint and cross-claimed against Arch on October 28, 2022. ECF No. 16.

Arch moved to dismiss LMIC's claims pursuant to Rule 12(b)(6),[4] arguing that the conditions of the Exclusion Endorsement were not met and the Arch Policy therefore provides no coverage for the underlying events. ECF No. 18. By Opinion and Order dated August 25, 2023, Judge Ramos denied Arch's motion to dismiss. In reaching his decision, Judge Ramos considered the Arch Policy and the Exclusion Endorsement as integral to the Complaint, but he did not consider Arch's assertion that the conditions of the Endorsement were not met, which "raise[d] issues of fact inappropriate to adjudicate on a motion to dismiss." *LM Ins. Corp.*, 2023 WL 5509264, at *4.

The parties proceeded to discovery, ECF No. 24, and on November 2, 2023, this action was reassigned to the undersigned, ECF No. 29. In April 2024, the parties participated in a

---

[4] All references to the Rules are to the Federal Rules of Civil Procedure.

settlement conference before Magistrate Judge Robert W. Lehrburger, after which James River and LMIC settled the portion of their remaining dispute regarding LMIC's defense costs. *See* Steck Decl. Ex. V, ECF No. 55-24; Drudi Decl. Ex. 3, ECF No. 57-3. Thus, the remaining issues in this case are the priority of coverage between the parties and whether Arch is obligated to reimburse LMIC and James River for the amounts they paid to defend and settle the Underlying Action. These are the issues presented in the parties' cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[5] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477

---

[5] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e) (amended to Fed. R. Civ. P. 56(c)(4) in 2010)).

## DISCUSSION

The principal issues presented in the cross-motions for summary judgment are (1) whether, as a matter of law, the Exclusion Endorsement operates to exclude coverage under the Arch Policy to 48 Wall and InsideSquad if DATO failed to comply with the Endorsement's conditions; (2) whether, if the answer is yes, Arch has demonstrated that the Endorsement's conditions were not satisfied beyond any genuine issue of material fact; (3) whether Arch owes 48 Wall and InsideSquad a duty to defend; and (4) the priority of coverage between the three insurers. The Court addresses each issue in turn, reserving judgment on the question of priority of coverage.

**I.    Arch's Duty to Indemnify**

The parties' principal disagreement is whether the Exclusion Endorsement in the Arch Policy excludes coverage to 48 Wall and InsideSquad (i.e., Arch's additional insureds) if DATO (i.e., Arch's Named Insured) failed to comply with the Endorsement's conditions in subcontracting with Star.

A.   **Relevant Legal Principles**

Insurance policies are contracts subject to ordinary principles of contract interpretation. "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). The key initial inquiry "is whether the contract is unambiguous with respect to the question disputed by the parties." *Id.* Courts "must give unambiguous provisions of an insurance contract their plain and ordinary meaning." *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011). But if a contract term is susceptible to at least two reasonable interpretations, its meaning "is generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Institute v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989). The totality of coverage under a policy has been described as "the net total of policy inclusions minus exclusions." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 772 (N.Y. 1995). Exclusions from coverage "must be set forth clearly and unmistakably, not be subject to any other reasonable interpretation, and fit the particular case." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 237 (2d Cir. 2002) (citing *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993)). In construing an endorsement to an insurance policy, "the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Cnty. of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994). "[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." *Belt Painting Corp. v TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003). "At the same time, an insured must demonstrate that an exception to an exclusion applies where coverage rests on the application of such exception." *Monteleone v. Crow Const. Co.*, 673 N.Y.S.2d 408, 411 (App. Div. 1998).

### B. The Exclusion Endorsement

The Endorsement sets forth plainly that the Arch Policy does not apply to "any claim" for bodily injury to "any 'worker'" that "in any way, in whole or in part, arises out of, relates to or results from operations or work performed on your [i.e., DATO's] behalf by a 'subcontractor'," unless the subcontractor: (1) had a commercial general liability insurance policy at the time of the injury "nam[ing] you [i.e., DATO] and any other Named Insured as an additional insured" with at least a $1,000,000 each-occurrence policy limit and covering the claim; and (2) "agreed in writing to defend, indemnify, and hold harmless you [i.e., DATO] and any other Named Insured" for workers' bodily injury suits arising out of the subcontractor's work. Arch Policy at 37. Thus, if DATO failed to comply with the enumerated conditions in subcontracting with Star, the Endorsement would appear to exclude coverage for any claims relating to Sayari's injury.

LMIC and James River argue that two other provisions of the Arch Policy render the Endorsement ambiguous or unenforceable. First, they contend that, under the Separation of Insureds provision, "one insured's failure to comply with policy conditions [in the Endorsement] does not support disclaiming coverage to another insured." LMIC Mem. Supp. Mot. Summ. J. ("LMIC Mem.") at 16, ECF No. 61; *see* James River Mem. Supp. Summ. J. ("JR Mem.") at 11-12, ECF No. 50. Second, they argue that interpreting the Exclusion Endorsement to exclude coverage here would effectively nullify the Additional Insured Endorsement, which expressly names 48 Wall and InsideSquad, thereby creating an ambiguity that should be resolved in favor of the insureds. *See* LMIC Mem. at 21; JR Mem. at 10-11. The Court addresses each argument in turn.

1. Separation of Insureds Provision

The Separation of Insureds provision states that, "[e]xcept with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named

Insured," the Arch Policy applies "[a]s if each Named Insured were the only Named Insured" and "[s]eparately to each insured against whom claim is made or 'suit' is brought." Arch Policy at 58. LMIC and James River argue that *their* named insureds (48 Wall and InsideSquad, respectively) fully complied with the Exclusion Endorsement by signing written agreements with their subcontractors (InsideSquad and DATO, respectively), and they should therefore not be held responsible for DATO's failure to comply in subcontracting with Star. LMIC Mem. at 16-17; JR Mem. at 11-12. The problem with that argument is that the Exclusion Endorsement, by its plain terms, assigns the duty to obtain insurance from a subcontractor only to "you" (i.e., the Named Insured, or DATO) but provides that the consequence of a breach of DATO's duty is that "*any* claim" arising out of the work of DATO's uninsured subcontractor—not just a claim against DATO—is excluded.

LMIC's argument appears to depend on interpreting the words "you" and "your" in the Endorsement to refer separately to each insured. But the Arch Policy specifically defines "you" and "your" to refer to "the Named Insured shown in the Declarations," i.e., DATO, "and any other person or organization qualifying as a Named Insured," of which there are none. *See* Arch Policy at 47. Although 48 Wall and InsideSquad are "Additional Insureds," they are not listed anywhere in the Policy as "Named Insureds." *See id.* at 9. Because the Endorsement assigns a specific duty to DATO, it cannot reasonably be read as if DATO did not exist—nor does the Separation of Insureds clause demand such a reading. Rather, the clause states that the policy applies "[a]s if *each Named Insured* were the only Named Insured" and "[s]eparately to *each insured* against whom claim is made." *Id.* at 58 (emphasis added). The Endorsement therefore applies separately

to LMIC and James River, but it is still premised on the obligations of the Named Insured, DATO, with respect to its subcontractors.[6]

The cases LMIC and James River cite in support of their motions for summary judgment do not persuade the Court otherwise. In *Yoda, LLC v. National Union Fire Insurance Co. of Pittsburgh*, the First Department held that the defendant insurer's reliance on an employers' liability exclusion was unavailing because, if the two plaintiffs were found to be additional insureds, the liability of the defendant's insured "would be indirect." 858 N.Y.S.2d 14, 15 (App. Div. 2008). Without any further analysis or explanation of how the exclusion was worded, it is impossible to know whether *Yoda* has any applicability here. In *Northfield Insurance Co. v. Derma Clinic, Inc.*, the Second Circuit, applying Connecticut law, merely observed that a separation of insureds clause "requires that the claims against each insured be analyzed from the perspective of that particular insured," providing no insight into how the particular clause in this case should be analyzed. 440 F.3d 86, 93 (2d Cir. 2006). And in *Sears, Roebuck & Co. v. Reliance Insurance Co.*, the Seventh Circuit held that a completely different exclusion endorsement was inapplicable to the plaintiff; LMIC has not explained how the case is relevant here. 654 F.2d 494, 500 (7th Cir. 1981).

In their respective oppositions to Arch's motion for summary judgment, LMIC and James River cite a case that is more on point: *Zurich American Insurance Co. v. Alterra American Insurance Co.*, No. 653540/2021, 2023 WL 8653097 (N.Y. Sup. Ct. Dec. 13, 2023), *aff'd on other grounds*, 232 N.Y.S.3d 489 (App. Div. 2025). There, the court held that an insurance policy's

---

[6] In its Opposition, James River turns this argument on its head, arguing that the Endorsement's use of "you" and "your" means that it applies *only* to DATO, and has no applicability to claims against 48 Wall or InsideSquad. *See* James River Mem. Opp'n Mot. Summ. J. at 4-8, ECF No. 66. But because the Endorsement applies to "any claim," not just a claim against DATO, this argument also fails.

11

uninsured subcontractor endorsement excluded coverage for the insured who failed to comply with the terms of the endorsement, but did not exclude coverage for additional insureds in light of a separation of insureds provision. *Id.* at *5. That policy's language, however, differed in a small but significant way from the language at issue here: its preamble defined "you" and "your" to refer to "the Named Insured shown in the Declarations *and any other person or organization* qualifying as an insured." *Id.* at *2 (emphasis added in original). Thus, the endorsement in that case, which provided that "you" will require all subcontractors working on "your" behalf to maintain insurance naming "you" as an additional insured, *id.*, could reasonably be read to impose separate duties on each individual insured, as if the others did not exist. Here, the same is not true, because "you" in the Arch Policy refers only to DATO.

Although there is limited case law on the interplay between a separation of insureds clause and an uninsured subcontractors exclusion endorsement, courts have more frequently discussed the application of a separation of insureds clause to an employee exclusion endorsement, under which coverage is typically excluded for bodily injury to an employee of any insured. Surveying the case law across multiple jurisdictions, one court has explained:

> Courts are divided on how to interpret policies containing both an "any insured" exclusionary clause and a separation of insureds clause. A minority of courts hold that a separation of insureds clause mandates that an insurance agreement—including its exclusions—be read as if each individual seeking coverage is the only "insured" covered. Thus, in the minority view, when a separation of insureds clause is present, an exclusion precluding coverage to an employee of any insured applies to each insured individually. In other words, the separation of insureds clause controls over the "any insureds" exclusion cause. The majority of courts, however, have found just the opposite. The majority opinion holds that a separation of insureds clause does not prevent an exclusion from barring coverage to *any* insured, even when the particular insured seeking coverage is not himself the employer.

*Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219, 1229 (D. Haw. 2010). In what has been described as the minority view, a court in this District held that a named insured who sought coverage for bodily injury to the employee of a different named insured was not barred by

the policy's exclusion for "bodily injury to any employee of any insured." *Shelby Realty LLC v. National Surety Corp.*, No. 06 Civ. 3260, 2007 WL 1180651, at *1 (S.D.N.Y. Apr. 11, 2007). The court held that the policy's separation of insureds clause, which stated that the insurance would apply as if each named insured were the only named insured, "limits [the court's] reading of the [exclusion] to individual insureds, as though each is the only insured under the policy." *Id.* at *4. But another court in this District has sided with the majority view, explaining that "[t]o hold otherwise would render the exclusionary language inoperative." *Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 Civ. 7425, 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012). The *Barfield* court reasoned that "where exclusionary endorsements refer to '*the* insured,' rather than '*any* insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony." *Id.* But where "the language of the exclusion refers to '*any* insured' it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity." *Id.* In a summary order, the Second Circuit has cited with approval the distinction drawn in *Barfield* between "the insured" and "any insured" language in an employee exclusion. *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 630 F. App'x 6, 8 (2d Cir. 2015).

Although not precedential and not cited by the parties, the *Endurance* decision is highly instructive here. There, the district court had held that an employee exclusion clause in an insurance policy, when read in combination with a separation of insureds clause, did not exclude coverage of an additional insured general contractor (Hayden) for an injury to an employee of its subcontractor (Pinnacle), who was the named insured on the policy. *Id.* at 7. The Second Circuit reversed, holding that the language of the insurance policy was "unambiguous." *Id.* Specifically, the policy contained an exclusion for bodily injury to "[a]n 'employee' of the **named insured** arising out of and in the course of" either "[e]mployment by the **named insured**" or "[p]erforming

13

duties related to the conduct of the **named insured's** business." *Id.* at 7 (emphasis added in original). The policy defined the named insured as the subcontractor, Pinnacle, along with any organization it newly acquired or formed that lacked insurance. *Id.* The policy defined "you" as "the Named Insured shown in the Declarations." *Id.* Because the only named insured was Pinnacle, and the insurance coverage sought was to defend the contractor, Hayden, in a lawsuit brought by one of Pinnacle's employees, the Circuit held that "the text unambiguously excludes insurance coverage for injuries to" that employee. *Id.*

The Circuit rejected the argument that the separation of insureds provision required that the exclusion provision be read "from the perspective of the particular insured seeking coverage." *Id.* The separation of insureds provision was identical to the one at issue here:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom a claim is made or "suit" is brought.

*Id.* at 7-8. The appellees argued that, in light of this provision, the "named insured" in the employee exclusion should be read to refer to Hayden, the additional insured contractor. *Id.* at 8. Thus, because the injured employee was not Hayden's employee, the appellees contended that the exclusion did not apply. *Id.* The Second Circuit disagreed, observing that, "like the language 'any insured,' the language 'the named insured' evinces that the [employee exclusion] clause specifically exclude[s] coverage for bodily injury to employees of the named insured, Pinnacle." *Id.* at 8.

Similarly, here, the words "you" and "your" in the Uninsured Subcontracts Exclusion refer to DATO, not the additional insureds.[7]  The Court therefore rejects LMIC and James River's arguments based on the Separation of Insureds provision.

2. Additional Insured Endorsement

LMIC and James River also argue that the Additional Insured Endorsement, which amends "Who Is An Insured" to include both 48 Wall and InsideSquad as additional insureds, renders the Exclusion Endorsement ambiguous or unenforceable.  This argument is without merit.  The logic is essentially that Arch's reading of the Exclusion Endorsement would render the Additional Insured Endorsement illusory, creating an ambiguity that must be resolved in favor of the insureds. LMIC Mem. at 20-21; JR Mem. at 10-11.  As LMIC puts it, "[b]ased on Arch's argument, there is no situation where 48 Wall could be entitled to coverage under the Arch Policy, notwithstanding that it is specifically identified on the Arch Policy as an additional insured for the project at issue." LMIC Mem. at 20.  This is simply not true.  The additional insureds would have been entitled to coverage in numerous situations, including in this very situation if DATO had in fact complied with the conditions of the Exclusion Endorsement.  There is no ambiguity created by adding additional insureds to a policy but subjecting them to the policy's general conditions, terms, and exclusions.  "[A]n insurance policy is not illusory if it provides coverage for some acts," even if it is "subject to a potentially wide exclusion."  *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins.*

---

[7] Notably, this conclusion is not inconsistent with *Shelby*, because there the question was whether a *named insured* was excluded from coverage for injury to the employee of another named insured. *Shelby Realty LLC*, 2007 WL 1180651, at *1.  The separation of insureds clause, like the one at issue here and in *Endurance*, required the policy to be read "[a]s if each Named Insured were the only Named Insured," *id.* at *2—which mattered in that case, where there were two named insureds, but not in *Endurance* or in this case, where the issue is coverage for an additional insured.

15

*Co.*, 71 N.E.3d 556, 562 (N.Y. 2017). The Court therefore rejects the argument that the Additional Insured Endorsement renders the Exclusion Endorsement ambiguous or illusory.

### C. Arch's Burden on Summary Judgment

"Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143 (N.Y. 2012) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)). For the reasons discussed above, Arch has met its burden of establishing that the Endorsement is "subject to no other reasonable interpretation." *Id.* But LMIC argues that even if Arch's interpretation of the contractual language is correct, Arch has not met its burden to establish that the exclusion applies in this case. Specifically, LMIC argues that Arch's evidence that there was no written contract between DATO and Star is based on hearsay that would be inadmissible at trial and therefore cannot be considered on summary judgment. *See* LMIC Mem. Opp'n Mot. Summ. J. at 13, ECF No. 69.

Arch offers the following evidence to show that there was no written contract between DATO and Star:

- Arch's investigator, Gregory Hibbard, investigated the matter and concluded that there was no written contract between DATO and Star for work at the Premises. *See* Arch Statement of Material Facts ("Arch SOF") ¶ 6, ECF No. 58; Hibbard Aff., ECF No. 53-9. As part of his investigation, Hibbard interviewed DATO's owner, Alex Shulman, who confirmed that DATO did not have written contracts for their work with Star at this jobsite. Hibbard Aff. ¶ 9, ECF No. 53-9. Hibbard also reviewed DATO's "complete file in connection with the job in question and it only included a copy of the certificate of insurance for Star," which was for a policy period not relevant here. *Id.* ¶ 10 & Ex. B, ECF No. 53-11.

- James River "conducted a similar investigation and came to the same result" after speaking with Shulman: "that there was no contract." Arch SOF ¶ 8; Mandelbaum Decl. Ex. E, ECF No. 53-5.

16

- Subpoenas served in this action by counsel for LMIC[8] seeking any and all contracts between Star and DATO "went unresponded to by both DATO and Star." Arch SOF ¶ 9; Mandelbaum Decl. Ex. F, ECF No. 53-6.
- Sayari testified that he did not remember ever seeing any type of contract involving this work or job at all. Arch SOF ¶ 10; Mandelbaum Decl. Ex. G, ECF No. 53-7.

In response, LMIC does not offer any affirmative evidence that there *was* a contract between DATO and Star, but it argues that the evidence cited in support of Arch's statements includes inadmissible hearsay. LMIC Resp. to Def.'s Loc. Civ. R. 56.1 Statement ("LMIC SOF Resp.") ¶¶ 5-8, 10, ECF No. 68.

LMIC's argument is unavailing. Even excluding evidence of the statements that LMIC contends are hearsay (i.e., the statements by Shulman and Sayari), the *only* evidence in the record is evidence that there was no written contract between DATO and Star. Hibbard's review of DATO's files, which do not rely on statements by Shulman, confirmed that there was no written contract with Star and no insurance policy naming DATO as an additional insured for the relevant period. Hibbard Aff. ¶ 10, ECF No. 53-9, & Ex. B, ECF No. 53-11. And LMIC does not genuinely dispute that neither DATO nor Star ever responded to its subpoenas in this action seeking any and all contracts between DATO and Star. *See* LMIC SOF Resp. ¶ 9. Given that there is some admissible evidence that there was no contract between DATO and Star, and *no* evidence that there *was* a contract between them, the Court concludes that there is no *genuine* dispute of material fact that would preclude summary judgment in favor of Arch.

## II. Arch's Duty to Defend

LMIC and James River also argues that Arch had a duty to defend their insureds in the Underlying Action, notwithstanding this Court's ultimate conclusion as to whether the Exclusion Endorsement excludes coverage. Under New York law, "the insurer's duty to furnish a defense is

---

[8] Arch's statement of fact mistakenly describes Jaffe & Asher LLP as counsel for 48 Wall.

17

broader than its obligation to indemnify." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (quoting *Seaboard*, 476 N.E.2d at 275). Indeed, "so long as the claims asserted against the insured may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay,* there is no doubt that it is obligated to defend." *Id.* (quoting *Seaboard*, 476 N.E.2d at 275) (emphasis added in original). "The duty to defend remains even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered." *Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020) (quoting *Automobile Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)). However, "a narrow, but widely recognized exception to the four corners rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and 'unrelated to the merits of plaintiff's action, plainly take the case outside the policy coverage.'" *Id.* (quoting *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004)).

"In other words, a separate, contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620. The Second Circuit has described "at least three kinds of uncertainty" that can give rise to such a duty to defend." *Id.*

> The first is factual: did the injury occur in a time, place, or way that is covered by the policy? The second is legal: will the cases governing the insurance policy be read to impose coverage in a given situation? The third arises from the existence of *contra proferentem*: will the terms of the contract of insurance be deemed to give rise to an ambiguity that must be read against the insurer or will they be held to be clear enough to avoid the presumption? Each of these uncertainties will ultimately be resolved by courts or juries—and often in favor of the insurer, thereby precluding coverage and the duty to indemnify. But until they are, the insurer cannot avoid its duty to defend.

*Id.* All three kinds of uncertainty were present here. First, there was a factual uncertainty at the start, because it was not clear from the four corners of Sayari's complaint whether Star had agreed in writing to indemnify DATO. Second, there was a legal question as to how a court would

18

construe the Exclusion Endorsement in light of the Separation of Insureds provision. And third, the terms of the Arch policy might have been deemed to give rise to an ambiguity to be resolved against Arch. The latter two uncertainties, at least, have persisted until today. And although the Court now holds that there is no factual uncertainty, and it rules in favor of Arch on the questions of contract interpretation, "until such a ruling issued, the question of whether [Arch] might be held liable to indemnify [48 Wall and InsideSquad] was in doubt." *Id.* at 623. Accordingly, the Court concludes that Arch was obligated to defend LMIC's and James River's insureds in the Underlying Action.

Finally, the parties disagree at length about the priority of coverage among the three insurance policies. *See* LMIC Mem. at 23-24; JR Mem. at 12-18; Arch Mem. Opp'n Mots. Summ. J. at 10-12, ECF No. 72. However, it is unclear from the briefs whether these arguments apply with equal force to the duty to defend as to the duty to indemnify. To the extent the parties wish to address priority of coverage as it relates to Arch's duty to defend, they may do so in subsequent briefing, discussed below.

## CONCLUSION

For the reasons stated above, LMIC's and James River's motions for summary judgment are **DENIED IN PART and GRANTED IN PART**, and Arch's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.

The Court hereby declares that (1) Arch had no obligation to provide additional insured coverage to any party in connection with the Underlying Action; but (2) Arch had a duty to defend 48 Wall and InsideSquad in the Underlying Action.

The parties are directed to meet and confer as to the amount of any money judgements for LMIC and James River. By **October 10, 2025**, the parties shall submit a joint letter indicating whether they have been able to resolve this issue. If not, the letter shall propose a process for

resolving the amount of any money judgments for LMIC and James River and any remaining issues as to priority of coverage, such as further summary judgment briefing or trial on stipulated facts. If the parties propose additional briefing, the status letter shall include a proposed briefing schedule and shall also state whether the parties seek a referral for mediation, either through the District's mediation program or to the assigned Magistrate Judge for a settlement conference.

The Clerk of Court is respectfully directed to terminate ECF Nos. 48, 49, 51, and 53.[9]

SO ORDERED.

Dated: September 25, 2025

New York, New York

_____
DALE E. HO
United States District Judge

---

[9] The document at ECF No. 53 is a declaration that appears to have been filed as a motion.